The next case this morning is Pingleton v. Albers And Mr. Hendricks, would you proceed when you're ready please? May it please the court, Mr. Heller. I represent Darren Pingleton and Katherine Krause. They're the appellants in this case. We were the plaintiffs at the trial court. I'm asking this court to reverse the trial court's ruling that granted the defendant in this case, Myron Albers, a prescriptive easement over a parcel of land that's owned by my client. And I'm also asking the court to reverse the trial court's ruling that the defendant was granted an easement appurtenant to my client's property. And that's what I'm asking the court to do in this case. The history on this case was my client purchased about 90 acres of property in Union County in 2002. I think they closed that in June of 2002. After he closed that transaction, he noticed some activity going on on the west side of his property, which turned out to be the defendant, Mr. Albers, who owned land to the north of my client's property, doing some bulldozing on the west side of the property. As a result of that, it led to a declaratory judgment action that I filed on behalf of Mr. Pingleton and Ms. Krause to ask the court to declare the right to access and use that parcel of the property. As a result of that action, the defendant filed a counterclaim. And in that first counterclaim, he asserted that he had an easement appurtenant based on some written instruments that had been recorded starting in 1914 up to 1935, and then subsequent some other documents that started being recorded again in 1969. We went forward to the trial in this case, and I won't say it was halfway through the trial, but toward the end of the first day of the trial, the defendant decided he needed to amend his complaint and add a new count in the middle of the trial, which the trial court allowed him to do. And he amended his complaint, added a second count to the complaint on the basis of prescriptive easement, which is, as the court knows, adverse possession. At the conclusion of the trial, the court ruled that the defendant had a prescriptive easement on a strip of land that's one rod wide on the west side of my client's property. And I know the description says two rods wide, but the other rod is on the adjoining landowner's property, Mr. Perl. The court also stated or denied the defendant's claim for an easement appurtenant, but also made a finding that he was granted an easement appurtenant, which was inconsistent, and that's why I asked the court to reverse that particular finding. Let me clarify something for you, because these are cases that we don't see that often and appreciate lawyers that do this, but am I correct that an appurtenant easement is a right to use the adjoining property that transfers with the land? That is correct. That's the general description, yes. And it always transfers with the land unless the owner of the dominant tenement releases it. Is that also correct? That is also rule of law, yes, Your Honor. Okay. All right. And let me ask you one other question here. On this little diagram, when it says glitch, that means that's what's missing. Is that correct? That is correct. Okay. And I would say in the purport what he claims to be, what the defendant claims to be an easement appurtenant, my argument is that document, those documents are actually fees simple. Okay. Now, the other rule is, Judge, is that this court had ruled in the case of, I think it's Abisher v. Zobrist in 1977, that to be an easement appurtenant, it has to be carved out of the land by the owner of both the dominant and serving estate. And that's not the case here. Those deeds that were recorded in which he made a claim of easement appurtenant were not by the owner of both the Alvarez property to the north and what we're calling the Pingleton property to the south. So based on this court's decision in 1977, you know, those rules don't come into play because it's not an easement appurtenant per that definition because it was not granted by the owner of both parcels of land. Now, the defendant argues in his reply brief that there's some case law that tends to indicate that an easement appurtenant can come into play from a conveyance from a neighboring landowner to your land even though they don't own both parcels. You do not find any case that specifically says that as a rule of law that contradicts this court's decision, 1977 decision in Abisher v. Zobrist. The court also ruled in the trial that even though there was an easement appurtenant, that there was sufficient facts to prove an easement by prescription and granted that to the defendant. Now, the court also said that the defendant was entitled to the easement based on the testimony at trial and ordered the defendant to now procure a survey of what was described at the trial. And I have presented – that's one of the issues I raised to this court that I believe that it's my position that the defendant had an obligation at trial to prove what the boundaries were of this easement, this prescriptive easement is, and did not do so. And is now kind of giving a second chance or second shot of going in and, I guess, having a survey done with or without my clients present of a piece of land that the boundaries are unknown to anyone but apparently the defendant to bring back to the court at a later date. And I believe that that's an incorrect ruling asking the court to reverse that on the basis that that was the obligation of the defendant at the trial to present the evidence of what that description is. Did he have to have a survey to prove the boundaries? Do you have to have a survey to prove boundaries? I believe you do in this case, Your Honor, because it's unenclosed property. It is – with regard to the north, what we're calling the northern deviation in this case, there is a survey of this purported roadway north and south that dates back to 1914. But to this deviation in the north, I believe the survey is required because there's no description as to what the width is, what the length is, where it starts, where it ends. None of that is described. It's just that I think the language was we meandered to the right or to the east when we got to the north part of this property and went through an opening where there's a railroad top. And wasn't there a lot of testimony, though, that that opening was in the same location for years, same opening? I believe that's correct. What is that opening? And again, that opening could have been – in early years, it could have been 10 feet wide. In other years, it could have been 20 feet wide. There was testimony that a fence had to be taken down at one time for a piece of machinery to be taken through. So there's conflicting evidence in that regard. And the Supreme Court has said that the defendant in this case has the obligation to prove by clear and convincing evidence what the boundaries of that easement are. And there is no evidence of what the true boundaries are, that there's some general descriptions. I mean, if I went to court on a personal injury case and I had a client that testified about some injuries but didn't present the evidence of all the injuries, am I entitled to go back a second time and get a second trial on my other injuries that I failed to put into evidence at that time? That's what the court's allowing them to do in this case. And I believe in this case, because the property was open, it was not restricted in any way, that an easement would have been the proper way to prove what the boundaries are. And so to answer your question, Your Honor, yes, I believe that the survey should have been performed. If the court noted, there were at least four surveys admitted into evidence during this trial of both my client's properties, Mr. Albert's properties to the north, and Mr. Pearl's properties to the west. So it could have been much more difficult to have a survey done of that particular land. With regard to prescriptive easement, I've raised two issues that I've asked the court to address. And the first one is whether the trial court erred in ramping the defendant at prescriptive easement when there was evidence raised that raised the presumption of permissive use that was not rebutted by the defendant's evidence. Also, as I just described to the court, that the prescriptive easement route was not clearly defined in the evidence in this case. And for those two reasons, I'm asking the court to reverse the trial court's decision granting the defendant a prescriptive easement. As I stated before, my client purchased a property from Abram and Beverly Norton in 2002. To the west of that property was property owned by Mr. Pearl, and he sold some of his property to a Mr. Pender. Both of these gentlemen testified. To the north of the property was the defendant's property, Myron Allers. I believe the court in the appendix, there is a little drawing of that setup. The disputed roadway or strip of land runs north and south between the sections of those two properties. Much of the testimony that was given at trial in the transcript was regarding the condition of that disputed strip of land and the use of that disputed land. My position is the evidence doesn't support the trial court's finding of prescriptive easement because he failed to adequately show that the defendant's use was adverse. And what that means is that the easement by prescription must be established by adversity, exclusivity, continuity, be uninterrupted, and under a claim of right for a period of at least 20 years. And the Burr designed the defendant in this case to prove that, all the elements of that, both distinctly and clearly, as the appellate court has said in this case. What's the court's testimony? Numerous people that all used the land, all used the roadway, and it was never taken away at any time? That is true, Judge. I think the evidence shows that everyone used everyone else's land in this case. I don't think there's any dispute about that. In fact, that's my point. He has to show that his use is adverse to not only the owner but also with respect to everyone else. And in this trial, A. Norton testified that if we need to use somebody's property or somebody's land, we do it, and they can use ours. So you're saying permission doesn't equal adverse or prescriptive easement. If you're giving somebody permission, you do it. You cannot get adverse possession if you're given permission. And that's exactly what I'm saying. This was permissive use for Mr. Alders to use not only the strip of land but the northern deviation, as we call it in the trial. And because of that permissive use, there's a presumption that arises that it's not adverse. Now, he can overcome that presumption, but there's no evidence that there was other than permissive use. The only testimony that was given in an attempt to show there was not permissive use was that he didn't ask permission to use the property. But that's not sufficient evidence to overcome the presumption of permissive use when there is evidence of that permissive use. Dennis Pender also, which is a neighbor, he said any neighbor could use any of my property. That's on page 377 of the transcript. Jerry Pertle testified that he would go up and around the road and on to Abrams, A. Norton's property, which was the predecessor to my client, to use his land. Myron Alders testified that both his dad and Carlos Norton, the predecessor to A. Norton, which is the predecessor to my client, worked on the property together to fix some of the issues there. So they show co-use of that property. And actually, Myron Alders in his testimony said that he does not claim right to travel back and forth exclusive of Mr. Pertle, exclusive of Mr. Norton, exclusive of Mr. Pendleton, exclusive of Mr. Pingleton, or even exclusive of the court reporter that was sitting in the courtroom that day. He testified to that, unrebutted. That's a transcript, page 451. So it's clear from the joint use of the property by everyone using not only that disputed roadway but each other's lands that this use was permissive. And just the fact that he testified that he never had to use or ask for permission is not sufficient evidence to overcome the presumption of permissive use. And therefore, he cannot acquire the property rights by adverse possession because he does not meet that element. The rule really states that if there's evidence of neighborly relationships, that shows permissive use. And that's what that testimony showed was that there were just neighborly relationships between the parties and everybody used each other's land. Was there a meeting in 2003 when the defendant's wife asked if they could use it and said no? That's true. At that point, obviously, that neighborly relationship dissipated. But that would only give him maybe a year or two, at best, of adverse use. He must show up for 20 years, continuous. And that proof did not come forth in this case. The second argument or position I take is that the defendant failed to present by clear and convincing evidence of the boundaries of the easement he claimed. I think I mentioned that. The Supreme Court, in the case of Schwartz v. Piper, a 1954 case, said that where there is no deed or color or title, the claimant has the added burden of establishing by clear and convincing evidence the location of the boundaries to which he claims. And in this case, the northern deviation, as we've described it, has not been proven by other than some general descriptions of where it is. And even if the court would believe that there is a sufficient description there, again, that use was, by permission, not adverse to the owner of the property, Mr. Norton, before my client, and Mr. Pingleton when he owned the property. I believe that this is an element that the defendant needed to present, as Your Honor said, a survey of what that location is. Finally, I ask the court to overrule the trial court's ruling that Mr. Albers has a non-exclusive easement, a pertinent, because the documents that he relied on that started in 1914, if you look at the documents, were actually deeds of the simple. The description says the first deed was from Mr. Hurdle and Mr. Emery. Mr. Hurdle owned the land on the west side. Mr. Emery and his wife owned the land that the Pingletons now own. They conveyed this two-rod strip of land using a statutory quit-claim deed form, which said they conveyed a quit-claim to Mr. McCaffrey, this two-rod strip of land, hereby waiving any right to homestead exemption. And then signed it, and it was notarized and reported. That is a deed. The defendant argues that that was not a deed, that was a grant of an easement because it's stated in there for roadway purposes. And there is some case law that, you know, you look at the document as a whole to determine whether it's deemed to be a deed in fee simple or is it truly to be an easement or right-of-way grant. I suggest to this court that this is a deed, even with that language, because the roadway purpose, number one, describes what it's for, not as a limitation, but what that deed was for. But second, and I think most importantly there, if you read the rest of that initial deed that was prepared in 1914, it says, reserving unto grantor and the public the right to use that. Now, the law says that you cannot put an easement in your favor on your own land, and that's exactly what that would be if this court ruled that to be an easement and not a deed because he's reserving the use of that same property in that document. So looking at the document as a whole, it must be considered a deed in fee simple and not an easement. And I'm asking the court that based on the review of that, those documents, to reverse the trial court's ruling that the defendant has an easement appurtenant as a result of those writings. Now, in my prayer for relief, I ask the court to, if the court believes that there is an easement by prescription for that northern, that meandering part of the northern part of this property, to remand the case for the trial court to make a more definitive determination. I would ask that this court to strike that decision or that request for it to be remanded for that basis for two reasons. One, that, as I stated before, I do not believe there is sufficient evidence to prove a prescriptive easement. And number two, that's what the trial court's already ruled. I don't think it needs to be remanded for that purpose because the judge already has in his opinion or his statement to have a survey prepared. So I'm asking the court to strike that part of my prayer for your relief. You're withdrawing that request. Yes. Okay. Yes, thank you. So for those reasons, I'm asking this court to reverse the trial court's findings and rulings that defendant had a prescriptive easement over and across the strip of land one rod wide on the west side of my client's property and also to reverse the trial court's statement that the defendant was the owner of an easement appurtenant to the same land. Thank you. Thank you. And who is going to present the argument? Oh, I have a mixed opinion. Okay. Mr. Heller? I was looking at my own sheet. Sorry, Mr. Heller. I'm sure I signed that sheet. Yeah. My fault. That would be a bad way to start out. It would be. Good morning, Your Honor. May it please the court. Counsel Hendricks. I made a comment to Counsel Hendricks as we were during the break here as we're standing underneath Mr. Lincoln's picture that we're here today talking about a road that Abraham Lincoln might himself have traveled. You have evidence before you that this road existed in 1876. It was a major through road from between Union County and Jackson County. I don't know exactly what route Mr. Lincoln took in his debates that landed him in Jonesboro, but he went right through this neighborhood. It's an old road is my point. It's an old road. It's been there since prior to 1876 because by 1876, the earliest map we could find, it was already on the map. 126 years later, plaintiffs bought this farm and now want to say this isn't a road. So for 126 years, we didn't have a problem, and then all of a sudden, we do have a problem, and that's why we're here today. Your Honors, I would say to you that this is a fact case. The two primary issues in dispute are whether that's an easement, a pertinent or not. And a lot of case law that I've cited to you in the brief states that question and interpretation of easements is based on a determination of the intent of the parties. And in determining that intent, the court should take into account the attending circumstances. Intent, as we all know, is a question of fact. If I'm correct, if we go back to 1914, there was a document that absolutely created a non-exclusive easement for roadway purposes. That is our contention. Subsequent documents did not do that. Is that also correct? Yes and no. What really happened was McCafferty had the spot surveyed, and that survey that's in the record describes this as a roadway or parkway. One of the county surveyors surveyed it in 1914. McCafferty in 1914 then got this document, which I call an easement. Council calls it a conveyance of fee. And that document was signed in 1914 by those parties, but it actually wasn't recorded until, I think, 1933. In the meantime, McCafferty had sold his property to the Redelman family, and the Redelmans had died. And the Redelmans had conveyed to a gentleman named Abernathy, I think in 1932, and he had it a couple years. Now, Redelmans, they got the easement language in a document and got it recorded. When they got it from McCafferty, they recorded it. Abernathy didn't have a document that made reference to it. But Sam Alexander got the property in 1935, and he got the document also that made reference to the right to use the roadway. Now, those conveyances were in the form of proclaimed deeds. They were not the last two conveyances, not the 1914 one, but the others were just quick claimed deeds. No mention of road only or reserving rights for anybody else, just a simple quick claimed deed. From 1935 until 1954, Sam Alexander, who had recorded rights, owned this property. In the meantime, Emory, counsel's client's predecessor at the time of the 1914 document, in 1938, I think, had conveyed to another. Emory, who was in in 1940 or 41, conveyed to Normans. So there was, Your Honor, a gap back in the 30s for a short period of time. I think from 1932 to 1934, there was no actual document recorded that showed this moving along. Then after Alexander sold it in 1954 to Vandergraaf for two years and then Taylor for 13 years, it was not documented. And then the documentation was picked up again in 1969 when Albert's father purchased the land. So that is the documentation trail. There are two gaps in the documentation. You think that's irrelevant? I think it's irrelevant. Once a land is burdened with an easement, a pertinent. That is our position. I think the law clearly supports that, Your Honor. Let me ask a question about the trial court's ruling under paragraph B. Trial court says count one of defendant's amended counterclaims seeking an easement of pertinent pursuant to an express grant is denied. Okay. Because of the two-rod gap that you agree, which is probably why you filed the prescriptive count, because you realized you had a two-rod problem there. Your Honor, you could have been in the courtroom. That's exactly how it happened. It was in the middle of the courtroom, and all of a sudden, I understood the legal description of the parcel that Counsel Hendricks had put into evidence for part of the land. I understood it. That two rods coming across there came all the way across there and was a glitch in our north-south roadway. So you couldn't have an easement all the way through, at least on Pingleton Land? I did not have it conveyed to that easement by that 1914 document because Counsel Hendricks was entirely correct. That two rods, north-south, had been conveyed. When you get to that point, you got to cross over to Pirtle Land and be on that rod, right? Except that the evidence in this case, in 130 years of evidence, there's no evidence in this record anywhere that anybody, anybody, ever knew where that two rods was or that two rods was ever distinguished or ever existed separately or was ever used. And that's on your prescriptive? That's our prescriptive. Okay, here's the question I have. Trial court says, count one, deny. But then in the same paragraph, the court goes on to say, the court finds that the easement appurtenant granted in 1914 is valid except for the two rod gap. What does that mean? Well, what I think that means is this, Your Honor, because you have to read the part in here also about the merger argument that I offered on the two rod gap. When the court, my argument in the trial court for easement appurtenant all the way down, right through the two rod glitch, was that that two rod glitch was there. Then Carlos Norton, after he had purchased the original farm that was actually subject to that two rod right in the middle of that farm, couldn't even get to his north side, if that really was a barrier there. Then four or five years later, after the bank had foreclosed this other emery ground in the back here, including the two rod strip that came all the way across there, Norton bought some of that ground and the two rod strip and it merged back into his ownership. And so from 1946, that two rod is back in the Norton family. And that two rod is now entitled to payment because it's back in. I argued merger. There's no precedent for my argument. And the trial court so found that there was no precedent. But quite frankly, I think it's a valid argument. Well, I'm just trying to figure out whether the trial court granted any kind of or agreed that there was any kind of an easement appurtenant. I mean, the count was denied. I mean, the trial court just declared, I guess, that the easement appurtenant granted in 1914 is valid, except for the two rod. So does that mean you were granted an easement appurtenant? I believe we were granted an easement appurtenant, except for the two rod glitch. And I believe we got the two rod glitch by prescription. Well, why wouldn't the court say, why does this court say count one is denied? And why wouldn't count one be granted, except for the two rods? That's what I'm, it is confusing. Your Honor, I've read it many times and I think that that would have been a better writing by the court. But that's not the way the court wrote it. And there was some post-trial action going on and nobody, the fact is I'm not certain. That may not have been the court's original writing. I think that might have been. No, that's not correct. You might have prepared it. I'll tell you, I wrote it. Okay. But I think what happened was the original draft, the judgment that was submitted to the court, was not signed because there was an objection in the record to the language in that judgment. And so rather than a post-trial motion at that point, there was actually some argument about the language. And it was after counsel made some arguments that the judge then wrote that particular paragraph in his own word. I mean, it really doesn't matter if you prevail on the prescriptive easement. I understand that. But it's just kind of hard to understand exactly what that's supposed to mean when the trucker specifically says count one is denied. Well, and I agree with the court that that makes it confusion. But I think the last sentence really explains what the court is doing. I can't give you the easement the way you asked for it because you got a glitch. But I give you the easement pertinent except for the glitch. I think the brief is clear on my points about that's an easement pertinent as opposed to a D. I think the cases are there. And then there's that later case there that really those two cases very nicely explain what is and what isn't the distinction between what would be an easement and a fee conveyance. And the operative question is the salient question is where is the language that might appear to be a restriction? Is it like in that one railroad case back there on the sixth page where they're talking about the railroad in exchange for all this other stuff? It's going to do certain things about its right-of-way. Or is it conveyance grant to McCafferty for road purposes only, preserving blah, blah, blah. And just as in that latest case cited, that Cite Surveillance 2, those words are right in the conveyance clause. And that, according to the case law, is a prime indicator that that was an intention to convey an easement, not a fee. Counsel argues that you cannot grant an easement to yourself in your own land. That's a too narrow reading of that document. Mr. Emery on the east side, with this joint document, Mr. Emery on the east side was getting 15, 16 1⁄2 feet, a one-rod width of Mr. Purkle's land. Mr. Purkle was getting a one-rod width of Mr. Emery's land. Mr. McCafferty was getting both of those reserved for the public. I discuss that in a brief. I don't want to go into it in great detail, but it's kind of interesting. There had to be a public road at one time. And this is right on the section line. Right on the section line, which is where all public roads used to be. And if you look at those maps, the 1876 map, it's clearly a thorough road. By 1908, it's clearly less of a road in character. By 1914, the surveyor calls it a cartway, which is really what you would expect to find in this area of rural Union County. That would be a cartway. Henry Ford wasn't down in Union County yet at that time. So you wouldn't have expected more than that. But as time went along, it became, clearly in the 50s, Mr. Van de Graaff's testimony, in and out of there every day in a car. So it became a more modern, traversable-by-car road. And was used for all, whatever traffic was needed up and down that road to service that property. When it was a home, when it was a farm, whatever was needed, used that road. But they used different roads, right? Well... I mean, that's important, isn't it? Because did you have to show a 20-year consecutive use? Well, I think that the evidence is clear of this, Your Honor. The main body of that road still goes right up that section line. There are surveys there that show where the center line of that road is. It still goes up that same road in the same place. The prescriptive part should only apply to the Two-Rod Glitch. And I think the evidence is consistent that the road was always used intact. And there was never any recognition of what that Two-Rod Glitch would have been. It's within the two-rod width going north and south that the 1914 document conveys. It's really only at the north end, after you come up out of the woods into the prairie. And there's a 1980 aerial photograph map placed in evidence by the plaintiff that shows Carlos Norton's Orchard. And that is a good depiction of where that road meanders to the right up there to the north. Because Carlos Norton's Orchard curves to the right up there to the north. And Mr. Albers testified that the roadway up there is right at the edge of that field. And there's photographs showing where the edge of that field is. The plaintiff put a no trespassing sign right at the edge of that field. So it's at the northern part that it meandered. Why? Because there was a big ravine there. And so they meandered to the right. Now, it's not just one railroad tie. There are two railroad ties on that opening, one on either side. And Van de Graaff testified that's the same opening that was there when he lived on that farm from 1954 to 1956. Dave Norton testified he didn't know when that opening went in there. It had been there a long time. Taking the fence down to move farm equipment in was a different question. It happened to the east of this area. And it was a great big 30-foot disk that was too wide to get through that opening. And that's why they took the fence down and went across it. That's really not an issue or an evidentiary fact that is relevant to our dispute. Council says that there's not enough description of where that road is, that we've just got Park Blanche to go in with the judge's order and just put the road where we want to put it, put a survey out, and good move. That's not what the court's order says. The court's order says that the easement is valid where the road exists and that we are to get the surveyor to survey it and make a plat of it and record the plat of where it is, so that 126 years into the future we won't be asking where is that easement. It will be a recorded plat. It's not a question of not sufficient evidence in the record to determine where that is or to give the defendant, Park Blanche, to just go put the road in wherever he wants to and survey it. The court doesn't say that. Put it in where it is. That's what the court said. Adverse possession. My argument is the same on two rides or the whole road. And the argument is with or without presumption, adversity is shown. And I think it's important to keep this in mind. To show adverse possession, you don't have to have a fist fight witnessed by live people who come into the courtroom and testify, yeah, we were there 22 years ago, there was a fist fight, he knocked him down, and a guy never said boo or stopped him on the road again. Well, that makes a nice, clean adverse possession set of evidence, but that isn't what happens. What happens is Abe Norton is the live witness who can give the oldest testimony. Abe Norton testified when he first became acquainted with this property, it was already known that that road out there was for them, for Purvis, and principally for Albers. It wasn't Albers at the time, it was Sam Alexander at the time. And some of Abe Norton's relatives actually lived up there. And that was their road to get to their place. There's not been, since Abe Norton's presence, until Darren Pingleton arrived in 2002, there's not been an over-act of conflict over that road. There's not been an act of conflict over there. The evidence doesn't show an act of conflict over that road from 1876 to 2002. And that's where the presumption comes in that we talk about in our brief and talk about in our argument, and that is when you've got long use and you don't know what the origin of that road is, there's a presumption that the rights to the use of that road were resolved a long time ago and they're fixed and everybody is acquiesced in that. Now, counsel wants that kind of acquiescence, the fact that Abe Norton said, for that farm up there, it always has been for that farm up there. He told Darren Pingleton that before he sold it to Graham. All that time, since the 40s when Abe Norton was first there, everybody has indicated that Albers and Albers' predecessors had the right to do this. If I acknowledge that you've got the right to drive over my land, maybe I'm wrong. It turns out I acknowledge what's wrong. Maybe that document never was any good, but for 40 years I've been acknowledging that you have the right to go over my land. That raises the presumption that that right was settled a long time ago and that satisfies the element of adversity. In this particular case, I would submit to you that the element of adversity also exists. I'm going to talk first about the two-rod glitch. Nobody knows where it is. That's how non-claim of right against the roadway that is. Nobody knows where it is. Nobody could go out there right now and point out to you where that two rods is. A surveyor could figure out where it is, but you can't go out there on the ground. Thank you, Your Honor. We'd ask that you have a further talk. Rebuttal. Let me ask a quick question if I can. Do you agree that in paragraph B the trial court did grant an easement appurtenant? I mean you must because you argued in It's what it looks like to me, Judge. Okay. So that's really not disputed, I guess. Exactly. Mr. Heller talked about we have this order now that we can go get this survey done because the order says that they're going to get a survey done of the roadway and the northern meandering part of the roadway. My question is, okay, they go into the survey. What if it turns out that that roadway is three rods on my client's property, not the one rod that's in this document of 1914? Do I get another crack at it? Do I get to oppose that again? Because now it's a different legal description of what they relied on based on this 1914 document. And also when they get this description for this right turn at the northerly part, again, do I get to go back and have another trial and say that's too narrow, that's too wide, it goes too far to the east, am I entitled to those rights to have another trial? Again, that's why we had the trial in the first place. Those items should have been presented to court at that time, allowed me to defend at that time, not in a post-trial order to allow more evidence to be put in, if you will. I have no basis to object to that. It's not, you know, I think that it's an error by the court to make that ruling because the evidence should have been presented at the time. Mr. Heller mentioned that, you know, there's a presumption of adversity or a presumption of adverse possession if the origin of the way is not known. That's what some case law describes. Well, I submit to this court that the origin of his client's claim of the way is known, and that is that 1914 document. Now, he said that document, the court is to interpret or try to determine what the intent of the parties were with respect to those documents. Again, I submit to the court that the intent of the parties is clear, that that reference to that roadway or easement, if you want to call it that, disappeared in 1935. And there should be, you know, there's no greater showing of the intent of the parties that that was no longer to be a roadway for anybody's purposes because it was never needed after 1935. And for those reasons, I'm asking this court to reverse the trial court's rulings, both with regard to the prescriptive easement and the easement of purpose. Thank you very much. Thank you, each of you, for your briefs in this case and the arguments this morning will get you a decision. Thank you again.